All right. Having here argument in our last case, number 15, 1907, Bolton v. Colvin. Good morning, Your Honor. My name is Philip Keat. I'm here on behalf of the appellant, Zonnytta Bolton. There are three issues in this appeal. One, did Ms. Bolton waive her right to sue the Social Security Administration for discrimination in federal court? If so, second is, if so, is that a matter of raising an affirmative defense or a challenge to the jurisdiction of the court? And third, did Congress authorize the Merit Systems Board to immunize Office of Personnel Management regulations from judicial review? On the discrimination issue, our major argument depends on the difference between the case that was brought at the Federal Circuit and the case that was brought in district court for discrimination. The claims at the Federal Circuit were limited to whether the board was – the question that the board explained its failure to decide whether the OPM regulations were facially invalid. Under the board's precedent, it should have told us that – whether the facial invalidity arguments could be dealt with in the individual appeal. Okay, Mr. Keat, maybe you could just get a little bit higher, you know, a little bit more macro in your analysis. And tell us here, it seems to me that the unusual thing that occurred here was that the Merit Systems Protection Board split off this case sua sponte. Yes. And maybe you could focus on how that does or doesn't make a difference in this case, and is this something that's unusual? You know, give us some context rather than, you know, going into the granular. I hope it's unique. And what they did created a risk, which fortunately we avoided. Had – after they bifurcated Ms. Bolton's case, had in the OPM side of it, had they actually decided anything relevant to her demotion, had they, for example, held that the OPM regulations were properly applied in Ms. Bolton's case, or that the OPM regulations are facially valid and presumably – Well, in fact, they never got to the merits of that. Right. Is that correct? But had they done that, Your Honor, we would be in trouble under the res jucata type law or this waiver law, because it would have put us in a position of we could not get a federal circuit review, judicial review of that decision without waiving Ms. Bolton's discrimination claims against Social Security. That's the nightmare. Fortunately, they didn't get to it. Therefore, this whole analysis that would lead to, in order to get federal circuit review of the decision in OPM, you have to waive – Didn't she appeal in the federal circuit? She did. From their failure to get to it, if you will. Yes. In fact – And then she, at that point, she signs the form saying she's waiving her discrimination claim. Well, she didn't. She didn't sign the form saying that? Well, she signed a form saying that she had no discrimination claim against the Office of Personnel Management. And the law is pretty clear that that waives it. Then the question comes back to, under Bushell, Smith, and Chappell, what other types of claims, other than a potential claim against OPM, is necessarily waived if you seek judicial review of a federal circuit, of an MSPB decision? But the form that she signed related to this case. Right. The language says no claim of discrimination by reason of race, sex, condition has been or will be made in this case. Doesn't that make a difference in terms of the waiver analysis? I would think so, but we don't actually – the cases don't totally depend on that. You read Smith and Bushell in particular. They simply indicate that if you choose to litigate part of your challenge to your demotion, if you choose to do that in a federal circuit, then you can't bring a case of discrimination in district court. And they mention the Form 10 as simply reminding people of the fact that you can't get to – you can't challenge it in adverse action to the forms. Isn't the waiver language is found more in, at least when I read it on Form 10, on if she would have checked number two, not number one. Number one says in this case. Yes. Number two says any claim of discrimination. This is the race before and decided by, has been abandoned or will not be raised or continued in this or any other court. That's the complete waiver argument. She didn't check that one. She checked the first one that said in this case. That's correct, Your Honor. Doesn't that help you? That helps us. This whole thing shouldn't last beyond this dialogue. Are you suggesting the case law, though, hasn't gone there? No, it hasn't. Well, I'm afraid that it's not going to last. There are other cases that rely on this same more limited waiver, if you will. Is that what you're saying? Yes. I think the analyses in Cushel, Smith, and Chappell do not seem to depend on precise wording of whether it's box one or box two. Were those all mixed cases? They were all, well, yes, they were all mixed cases at the MSPB. Yes. And in each case, the appellant. So why does that make a difference in your analysis? Well, because. And this is a friendly question. It gets back to what the courts did in Cushel, Smith, and Chappell is compare what was filed in district court with what had been presented to the Merit Systems Board and what was presented to the Federal Circuit. And they found in each of those cases that the facts and issues were totally intertwined. So that under standard res judicata law, which is, did they bifurcate the case? Are they splitting the cause of action? That's really what the courts have been doing is analyzing. You're agreeing. See, I'm trying to just figure out how simply we can look at this. And it seems to me that you're agreeing that there was a mixed case in this, but not in this appeal. The mixed case was the separate case where the adjudication came and is contested in district court. This is simply the OPM regulation case, which was never mixed because it was spun off by the MSPB sua sponte. That's exactly correct. And there is nothing, when you go through the factors that the court considers in deciding whether this case implies some other case or the standard res judicata, you chose to sue in this court and get a judgment. That means you can't go to another court on the related issues. For example, the courts asked whether the case filed in district court was so closely related, both logically and factually, as would result in a tremendous waste of judicial resources, while the district court and the court of appeals considered the identical issues. In this case, that factor weighs in favor of we get to continue the district court case because there's no overlap. Would litigating the case filed in district court create the potential for differing definitions of issues, inconsistent interpretations of law, and irreconcilable decisions? No. In this case, in Puschel, the answer is yes. In Smith, the answer is yes. In Chappell, the answer is yes. And in this case, the answer is no. And finally, I don't like the cliche, but both Smith and Puschel talk about, well, you've got to avoid giving the plaintiff two bites at the apple, which I think means two opportunities to sue or have a court decide on the legitimacy of the adverse action with the possibility, well, if you lose the first time, then you'll win the second time. Right. And isn't another key difference between this case and those that here, the board put an appellant in this position, and in other cases, the claimant made that decision? Here, the board put her in this position and is now holding it against her, and she's got a Hodgson's choice of what to do. Yes. That is exactly correct. And it's just, in retrospect, well, we may have declined the invitation to litigate the OPM case at the Merit Systems Board, but then that would have resulted maybe in the Merit Systems Board saying, well, you had your chance to attack the OPM regulation. Well, and that gets rid of your Count 8 here, doesn't it? Yes. Your Count 8 is effectively dead. Well, I'm not sure. If we had not pursued, if we'd waived the right to challenge the OPM regulations at the board, certainly wouldn't look good going to a disreport on it. The other factor on this… Mike, I think that you're ahead of me. No, I'm sure you're ahead of me, and my colleagues probably are, too. But I just want to be sure that I understand that your submission is that the waiver that she filed is different than the waiver that was filed in Boucher. A, I think the answer is yes. But do you know? I will look here quickly. Are you looking at Boucher? I'm looking at my notes on Boucher. Oh, good. I'm sure that will get you there quicker than looking at Boucher. I'm pretty sure that, well, Boucher was a mixed case at the MSPB, so she would have had to check Box 2 rather than Box 1 in order to go to the Federal Circuit. She was trying to get two bites at the apple. She was trying to. I don't know if the court noticed, but this was the fourth case that she had at the Fourth Circuit, and I think it was five or six district court. Two or 12 bites at an apple. So the language in Clause 1 is in this case. Is that right? Yes, sure. That's a big difference? Yes. Okay. But if at worst, if that somehow does say you still have to look at whether a subsequent lawsuit on discrimination is somehow part of, quote, this case, you still have the same analysis that the courts did in Pushell, Smith, and Chappell, and the district court here, claiming that these are overlapping facts and they're the same facts and the same issues. So what do you say about that? Well, what I just said a couple minutes ago, you look at what was presented to the Federal Circuit, which was these questions of laws for whether they… Well, usually in race judicata or collateral estoppel cases, you look at what one or the other, look at what could have been presented. Yes. And nothing, we could not have taken any of the claims of discrimination, any of the facts or issues regarding discrimination, or about the merits of the demotion. We could not have taken them to the Federal Circuit in appealing the OPM decision, and we did not do so. But I thought that at the bottom of your OPM claim was a claim that the agency had not interpreted the regulations, and presumably, or interpreted them correctly or something, and presumably corrected them. If correctly interpreted, it would benefit the client, or is he just a flying ombudsman correcting regulations that don't apply to him? Well, actually, our major… Well, isn't that so, that the correction of the regulations was to benefit the client in the employment case? Yes, but what happened, Your Honor, is we fell into the trap of making two arguments. One is purely and simple, facial invalidity. And then, and by the way, how do you show that when you show it as it affected Ms. Bolton? What the Merit Systems Board did in the OPM case was explain why they wouldn't decide whether the OPM regulation had been properly interpreted in Ms. Bolton's case. They didn't explain, to my satisfaction, why they wouldn't decide whether to review it for facial invalidity. But in any event, we didn't take it. What if the OPM case had gone in your favor? Well, that's right. Where would you be here? I think we'd be in bad trouble. I think we'd be… I mean, that's the problem with res judicata. Why didn't you object to them spinning it off? It had been so many years since I took civil procedure, the notion of having things destroyed by res judicata hadn't occurred to me. We were lucky. We were unlucky that they bifurcated the case. We were lucky that they didn't reach a decision on the merits relevant to Ms. Bolton's demotion. Yes, we won or lost. That would have created problems. But it would have led, if there is any logic to this whole thing, it would have led to the dismissal of Ms. Bolton's claims against SSA at the Merit Systems Board. And we have this second part of this, this whole waiver thing. Even though you didn't object, you did make numerous filings in both the federal circuit and before the board saying that these claims were not intended to be separate. That is correct. Yes, Your Honor. And the Form 10, in any event, has to be read as part of the record in the federal circuit where we told the federal circuit. Yeah, back to Form 10. Page 564 of the shell, I think, explains what you said. It must have been check box number two. I mean, it doesn't say that directly, but it points out that there's a distinction there and the claimant there had notice of that. Right. And I don't think there's any sense to saying you file Form 10 14 days after you file an appeal and you can't clarify that or amend it or change it. I just noted in preparation for the argument that one of the cases the agency cites for the proposition that the Form 10, once filed, can't be changed, actually says, and this is a Townsend case, the court's relying on the amended Rule 15C Statement of Discrimination. We told the court that notwithstanding Form 10, we have an ongoing discrimination claim against Social Security and we intend to take it to district court if we lose. That's consistent with your Form 10. Notwithstanding, it's consistent because you said no claim for discrimination in this case. And so that's clear. And then you repeatedly told them that. Yeah, so this made clear that this case did not include the Social Security case. The government then said the same thing. And as they explained it to the district court, they urged us to do what we did. We dropped the Federal Circuit's appeal and concentrated on the district court. The government said what? That their submission to the Federal Circuit was in the context of the government suggesting that plaintiffs' challenge to OPM's regulations were intertwined with their challenge to SSA's personnel action, and that plaintiffs should continue with that case instead of a case in the Federal Circuit. And that's a Joint Appendix 278, Note 7. Okay. Thank you. So clearly the record at the Federal Circuit was we did not say we were disclaiming discrimination in any case but OPM, and then we affirmatively said and the government affirmatively said the case against Social Security is viable and is going to continue and go to district court. The other issue before we get to OPM is whether this is a matter of affirmative defense or something that goes to jurisdiction. And both Smith and Chappell calmly and carefully explained that federal district court jurisdiction depends on what's the federal question. In this context, did Ms. Fulton have a final decision from the MSPP in her discrimination case? If so, the district court has jurisdiction because it's a mixed case at the time of the decision from the American Systems Board. And finally, if I have one and a half minutes here, on the OPM regulations, our account aid. That's gone. It is not. Is it lost? Gone. No. I thought you just said in response to my colleague. No. I didn't mean that. I'm sorry. I thought the question is had we won or lost at the MSPB in the OPM case. Now, what basis is there for your count aid here? I mean, that's the OPM case dressed up in new clothing, isn't it? Yes. Yes, Your Honor. Yes. But the question is whether the courts have jurisdiction over a district court facial challenge to an OPM regulation, civil service regulation. Under the Civil Service Reform Act. Right. Well, under the Administrative Procedure Act, and the question is whether the Civil Service Reform Act granted the American Systems Board authority to immunize OPM regulations from judicial review. And the government relies on FAUSTO, which acknowledges a general rule that government regulations can be reviewed by courts. In FAUSTO, they said that's an exception where Congress has made clear, as in FAUSTO, the objective of the law was to change the situation where people, by discharged federal employees, took the cases to four or five different types of courts under four or five different authorities, and that a purpose of the Reform Act was to channel all adverse actions into the American Systems Board and then appeal to the federal circuit, usually, or to district court. There's no legislative history that any purpose of the Reform Act was to deprive affected people from the ability to sue district court under the Administrative Procedure Act for challenging the validity of the regulation. I'm way over time. You are. Thank you, Your Honor. Thank you. May it please the courts that being fostered for the government. Your Honor, the district courts correctly dismissed this case for lack of subject matter jurisdiction. I wanted to address the waiver point first. The district court correctly held that under this court's decision imputial, plaintiff waived the discrimination claims that she seeks to assert in this case. Can you talk just a hand louder? I think you bring the mic closer. Sorry. Is that better? Yes, thank you. So the district court correctly determined that under this court's decision imputial and related cases. But imputial was a mixed case. And what's the point, then, of item number one on form 10? Two answers, Your Honor. Number one, I think Pucil actually did not rely on box two as opposed to box one as the basis for finding that the plaintiff. How can you tell that? I can tell that because if you look at 577F3, page 564, and you look at the portion of that decision, the first column in the middle to the lower part of the page, where Pucil is explaining why the plaintiff there had notice, it's the ‑‑ here's a direct ‑‑ I'm just quoting from the decision. It says Pucil had ample notice that this was a law. In fact, Federal Circuit Claim Form 10, which Pucil completed as part of her appeal to the Federal Circuit, requires petitioners to certify either that no claim of discrimination has been or will be made in this case, or that any claim of discrimination raised before and decided by the MSPB has been abandoned or will not be raised. Or is the claim for ‑‑ I'm sorry. I don't think that's ‑‑ that's not how I read it. What does in this case mean? Number one, no claim of discrimination has been or will be made in this case, versus number two that says it's been abandoned and will not be raised or continued in this or any other court. I think, Your Honor, both of them affect waivers of related discrimination claims, and courts have held that both of them do affect a waiver. I think the fact that Pucil here basically coded the language from box one and from box two and didn't decide which box Pucil actually selected suggests that Pucil held that checking either box would have been enough to waive the discrimination claims here. No, it didn't say that either would have been enough to waive. It just said petitioners to get to the Federal Circuit have to certify either one or two. It doesn't say that either one affects a waiver. I think that the ‑‑ It can only waive what it states it's waiving. And if you're saying that no claims of discrimination have been made in this case, and this case is an OPM review case that has no allegations of ‑‑ with regard to the particular claim of discrimination, then why isn't it correct? Why did it affect a waiver? Yeah, I mean, I think Pucil pretty clearly, she was trying to get a second shot at it. This lady wasn't. She just had the OPM, the MSPB just spin things off on her, and she had a case that was up there on the regulations only. They didn't even address the merits. She never said she was waiving her personal discrimination claims. So, why is the government trying to pound the square peg into the round hole here? A couple of responses, Your Honor. I mean, again, I do think that Pucil reflects the notion that either Box 1 or Box 2 would have affected a waiver. Otherwise, there would have been no reason to quote the language in Box 1. Let's just look at rational people reading Form 10. How does the language of mark checking number one there, no claim of discrimination has been or will be made in this case, somehow waive her discrimination claim? I think it's reasonable, Your Honor, to interpret this case to mean all of the claims that are related. It doesn't say that. A waiver has to be precise. And what you're saying, it's just a dragnet that anything that comes close gets sucked up. And number two, is the precise waiver abandoned and will not be raised or continued in this case or any other court? That's waiver. So, do you have a case that says that Box 1 affects waiver? Yes, Your Honor. In addition to Pucil, which I still think does represent that. Well, the sentence before the discussion, the quote of Pucil, in Pucil of the rule, does lend some support to what you're saying. I'm not sure it's determinative. But the district court acknowledged when she was terminated, she had the opportunity to choose either to remove her case to the district court or to abandon her discrimination claims and proceed to the federal circuit. And then it quotes this language, suggesting that both of those things did that. I'm not sure that doesn't really square, but it gives a help to you. I completely agree, and I think I've said my argument. So, but you were answering a question that you had a case that actually did. Yeah, there are two other sets of cases I would refer the court to. One is the D.C. Circuit's decision in Smith, which used language that actually is even more difficult for making the argument that there was a waiver, yet held that there was a waiver. Where is that? Smith is... Where does it say that in Smith? Yeah. Let me get the... So if you look at 846F2nd at page 1523, and you look at the top of the left-hand column, that's where they're describing the waiver in that case. In that case, the plaintiff there waived basically a version of Box 1. It was a predecessor version. And again, the case for waiver there is even more difficult. There, the plaintiff said, this appeal involves no claim of discrimination, and no claim of discrimination was raised before the agency or before the Merit Systems Protection Board. And then he notes that he has not filed any suit, which is challenging the decision of the MSPB decision, which plaintiff also did here. So that's basically the predecessor language of Box 1. In addition to those cases, we cite in our brief some unpublished... Those cases being this case, which is just the D.C. Circuit, and this language in Bushell, which is what it is. Correct. And those are the two cases... Those are the two cases I've talked about so far. There's another set of cases which are unpublished decisions in the Federal Circuit that we've cited in our brief. Those are cases like Townsend, Cabone, and Pinson, where the court has held that checking Box 1 affects a waiver of discrimination claims. Do you have any cases... I'm sorry, go ahead. I'm sorry, go ahead. Because Smith says that what she said was, I have not filed a suit in any other court challenging the decision. I mean, it also says, this appeal. But would it... We're never going to actually agree, probably, on this. So go ahead, Judge Keefe. Okay. Do you have any cases that involve a Merit Systems Protection Board spin-off case that addresses only OPM regulations that was appealed to the Federal Circuit that was not decided on the merits at the MSPB and then was appealed to the Federal Circuit that was held to constitute a waiver on the discrimination claim that the individual later tried to bring in district court? Do you have anything factually analogous to this case? No, I'm not aware of any cases that have considered the question, so there are no cases going my way, no cases going plaintiff's way on that question. It's a fairly rare bird, this regulation. Totally rare. And so it seems to me what we've got to look to is what were they trying to do with this Form 10? It seems to me they were trying to keep people from getting successive claims heard by the court so that if you go this route, you can't go that route. But in this case, where the MSPB had spun off the regulation case, there was no personal discrimination case in front of them. So how is that a waiver in this case, the appeal of the MSPB's declining to address the merits of the OPM regulation? I do think that, I mean, as I said, the cases that I mentioned, the court may disagree, but they represent the notion that if you check box one, what you're communicating is that you're waiving all claims of discrimination that arise out of the same facts. And so it is our view that that's what essentially plaintiff was communicating when she checked box one. Well, is this waiver ambiguous then? I mean, it seems to me that this case is pretty clearly just the present case you're appealing, but it seems to me at best you've got an ambiguity that you're arguing one side of and opposing counsels arguing the other side of, and you lose if the waiver is ambiguous, don't you? I don't think that that's the case. I mean, in Peutschel's- Wouldn't you, under general waiver principles, that you lose if the waiver is ambiguous and you're trying to enforce it against the other party? I mean, I don't know that that principle is important to the waiver doctrine issue here. There was no inquiry in Peutschel, Smith, and Chappell into whether or not the waivers were ambiguous, and of course they used language, as I say, that was very similar to the language that was at issue here. I think one thing that's helpful to think about is sort of what was motivating the courts in Peutschel, Chappell, and Smith. I think the main basis for the holdings in those cases was the notion that at least where it is possible, a federal employee who's seeking judicial review of claims relating to her employment should bring all of her claims arising out of the same facts to one court and bring them together rather than bifurcating those claims between the federal circuit and the district court. I think critically- But she didn't bifurcate them. Yeah, and I think that's where there's- I actually do think she bifurcated at the relevant point. You're right, the MSPB originally bifurcated these claims, but prior to her filing her federal circuit appeal, the MSPB effectively merged the cases back together and denying the review of the regulation review case. The MSPB said it was denying review in large part because all of plaintiff's claims could be and had been addressed in her individual case. At that point, it effectively merged the cases together, and that decision was obviously before plaintiff filed her federal circuit appeal. At that juncture, plaintiff had a choice. She could have pursued all of her claims together by, you know, filing a- not filing an appeal in the federal circuit from the MSPB decision in the regulation review case and instead filing an appeal in the district court from the MSPB's disposition of the individual case at the appropriate time. If she had done that, she could have pursued all of her claims in both the MSPB regulation review case and in the individual case through the district court. But the MSPB didn't say that they were reconsolidating them. It just said that these issues are best left to the other case, so- I think there was no need for it to formally reconsolidate. I'm just saying that it effectively reconsolidated them. It said that all of the issues could be and had been raised in the other case. So how does she know that, though? How is she on notice that she now has one lawsuit instead of two lawsuits that have been dealt her? I think the MSPB's decision in the regulation review case gives her that notice. You know, it denied review on the basis of a four-factor test, two of which essentially ask whether or not review of the issues are available in other fora. And the court said, here, these issues could be and have been reached in her individual case for those two reasons and then based on our consideration of the other two factors, we deny review. It's hard to imagine that there would be any doubt that she could continue to pursue those claims through the individual case, particularly when we know that the very same MSPB is going to be deciding her petition for review of the individual case. They're going to adopt the same view as, in fact, they did. So upon receipt of that decision, she could have declined to appeal to the Federal Circuit and instead gone on to the district court. Is that what you're saying? Yes, that's exactly what I'm saying. And then she could have pursued all of her claims together. And instead, she chose to bifurcate the claims between the Federal Circuit and the district court. Well, she sure could have. There's no question she could have. That isn't our question, is it? The question is, was she required to do that? She clearly wasn't required to do that. I mean, it all comes down to whether that waiver, so-called, is enforceable against her, isn't it? She wasn't required to do it that way. She wasn't required in the sense that she did have as an option to go to the Federal Circuit. She chose to do that and then to waive her claims. But I do think, actually, that kind of the basis for the decisions in Peutschel, Smith, and Chappell were this notion that when we have two sets of parallel proceedings, which theoretically could go on independently, we shouldn't allow that to happen, at least when there's a possibility that a plaintiff in those circumstances could bring all of those claims together to one court rather than bifurcating them between the Federal Circuit and the district court. I thought the takeaway from those cases was that you can't get two independent court reviews of your discrimination claim. If you're going to merge it with the Civil Service Reform Act claim, then you've got one shot at it in one jurisdiction. Your discrimination claim becomes a mixed case because you're marrying it to the Civil Service Reform Act case, and you only get one merits review of that. Isn't that the takeaway from all those cases? I think the real takeaway is that any claims that arise out of the same facts regarding employment, they should all be brought to the Federal Circuit or to the district court together, if it's possible. Perhaps sometimes it's not, and then those might present more difficult questions. But I don't think, and just to address a question I think that someone asked during my opposing counsel's argument, I don't think it matters that the MSPB decisions in Puchel, Smith, and Chappelle were themselves mixed cases, cases where discrimination claims had been asserted. And one reason I think that it's clear that that is right is imagine that those decisions had been just ordinary appeals from an employment decision, employment actions where no discrimination claims had been asserted in the MSPB proceedings. So just pure personnel matters, and then subsequently there were discrimination claims that were asserted in a parallel proceeding that arose out of the same facts. I think that those decisions would come out exactly the same, that by filing an appeal with the Federal Circuit and waiving all related discrimination claims arising out of the same facts, that a plaintiff couldn't pursue those related discrimination claims, even though no discrimination claims had been asserted in this initial MSPB proceeding. And I think the reason is that what's underlying those decisions is this notion that at least where it's possible not to bifurcate your claims between the Federal Circuit and the district court, that is what you should do. And as I've said, we do think that that's exactly what happened here. In this case, factually and procedurally, did the appeal period run for filing the appeal in the OPM case? Did that run before she got the three-judge panel decision in the discrimination case? Was she required to note that appeal prior to getting the decision of the three-judge panel on the Social Security claim? Yes, if she wanted to file an appeal at the Federal Circuit, the deadline did expire before she got it. Does that make a difference here? I don't think it does, in part because I think that MSPB decision in her regulation review case, again, made clear that she could bring all of her claims, she could pursue them all through the context of her individual case. So there was no need to actually get it. So the government bifurcated it in the first place. She didn't do it. Then the government argues that, well, she could have brought them back together based on a decision that didn't actually say we consolidated it. We only effectively consolidated it. Those were your words. And then she was supposed to have filed her appeal before she even got that vague that we effectively consolidated it after we, not you, bifurcated it. That's a lot of, and not to mention this form. It just doesn't seem right, basically. Your Honor, I guess I would just disagree with the characterization about how unclear it was as to whether or not she could pursue all of these claims before the board. Keep in mind, the same board that decided the regulation review case is the board that's going to be deciding her appeal from the administrative judge's decision in the individual case. So it's already told her that she can pursue these claims through the context of that individual case. It's hard to imagine that that same board is going to turn around and say, no, no, we're not considering these. So I think there was sufficient assurance. Can I come back to this form for a minute? Is there something that we arguably call legislative history about this? You talked about the predecessor. Who gets this form together? Because I had sort of thought that the purpose of the form, it wasn't strictly a race judicata collateral style form, but it was just to keep one set of cases one place and another set of cases another place. I think that is one of the functions of the form. I think another function of the form that is underscored by these cases that we're discussing, Pugil, Smith, and Chappell, is this notion that the form helps to ensure that there's no bifurcation of claims, at least where it's possible to bring all the claims together. In answer to your question, I believe it's the Federal Circuit that puts out the form. I don't know the exact process for it. But you talked about a predecessor form. Yeah. I mean, the form has been revised over the years. It was most recently revised back in March of this year, although none of the changes were pertinent to this case. So it is revised from time to time. A predecessor version did use the term disappeal instead of this case, and I think that was the version that was in effect when Smith was decided. And as I said, the court there held that that language affected a waiver. I know I'm over time. I'm sorry. He went over his time, and you're not over your time until it's read anyway. So the form that was in this other case with the prior language, what did the prior language say? The misappeal. The language in Smith says, it's in 846F2 at 1523, it says, this appeal involves no claim of discrimination, and no claim of discrimination was raised before the agency or before the MSPB is the language that's quoted in Smith. And you think that that's checking what? I think that is conceptually basically one, except for replacing the word case with the word appeal. I think that is right. I do want to note, just to make sure it's clear, but the relationship between the various arguments the plaintiff is asserting here, the plaintiff is arguing that the CSRA provisions that we've been just discussing provide the basis for the court to consider and exercise jurisdiction over counts one through seven in the Clem Plaint. But the plaintiff is not relying on the CSRA provisions for count eight of the complaint. Instead, for count eight of the complaint, plaintiff is relying solely on the Administrative Procedure Act in 28 U.S.C. section 1331. So even if this court ends up disagreeing and thinking that plaintiff didn't waive the discrimination claims, or that the waiver somehow didn't deprive the district court over jurisdiction over the related non-discrimination claims, that holding would be covered as counts one through seven. Count eight is separate, and we think there's no question that under a governing precedent, count eight is precluded by the Civil Service Reform Act under cases like Bastow-Elgin and the like. So I just want to make sure that relationship is clear. Do we have other questions? Thank you very much. Thank you. Sir, do you have any rebuttal? 30 seconds? Yeah, about a good amount. Just on one of the points that was raised. The OPM decision was in April 2013, and the SSA decision was in January 2014. That's the decision. January 14 was what triggered our right to sue in Middle District of North Carolina. I think counsel is saying, and I think this is what the district court said, that when we received the April 2013 decision in OPM, we should have sued on that and everything else. And I don't think that would have even been legally possible. There's no way we could get to, in April 2013, into a district court to review the questions, which we then brought to the federal circuit. That's just the whole thing of, which is in all of the decisions, Pushell, Smith, Chappell, the person had an opportunity to file suit on all his or her claims in one court of competent jurisdiction and chose to not. And certainly, alongside all the other things in this case, in April 2013, Ms. Bolton did not have the opportunity to sue on whatever it is she was claiming about the decision in OPM, as well as her demotion and her discrimination claims under demotion. Thank you very much. Thank you, Your Honor. We will come down. We'll ask our clerk to adjourn court, and then we'll come down and say a little more. This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: Diana Gribbon Motz, Barbara Milano Keenan, Stephanie D. Thacker